AARON M. CLEFTON, Esq. (SBN 318680)
CLEFTON DISABILITY LAW
2601 Blanding Ave, Suite C
#336
Alameda, CA 94501
Telephone: 510/832-5001
info@cleftonlaw.com

Attorneys for Plaintiff
ELIZABETH CHAVEZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ELIZABETH CHAVEZ,

Plaintiff,

v.

CLUB RODEO, INC.; VAKILIKI P. KOURETAS (TE); BESSIE VAKILIKI KOURETAS (TE),

Defendants.

CASE NO.
Civil Rights

**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES:**

1. **Violations of Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*)**
2. **Violation of the California Unruh Act (Cal. Civil Code §§ 51 and 52)**
3. **Violation of the California Disabled Persons Act (Cal. Civil Code § 54 *et seq.*)**

DEMAND FOR BENCH TRIAL

Plaintiff ELIZABETH CHAVEZ complains of Defendants CLUB RODEO, INC.; VAKILIKI P. KOURETAS (TE); BESSIE VAKILIKI KOURETAS (TE), and alleges as follows:

1. **INTRODUCTION:** Defendants denied Plaintiff, a paraplegic wheelchair user, an accessible restroom, an accessible path of travel to the seating area located in front of the stage and an accessible bar at Club Rodeo Rio (the "Club") located at 610 Coleman Ave, San Jose, California. On October 24, 2024, Plaintiff and her husband visited the Club for an afterparty after attending a concert in the San Jose area. The barriers of access at the Club left Plaitniff without a way to safely use the restrooms in an accessible manner compared to non-disabled patrons, among other indignities she suffered because of access barriers present at the Club. What should

have been a wonderful date night between parents, a rarity of time together without their young child in tow, became an embarrassing an unpleasant experience that cut their night short.

2. The discrimination caused Plaintiff difficulty, discomfort and embarrassment from the exclusion she felt due to the lack of accessible seating and the inability to use the restroom comfortably like everyone else. Plaintiff suffered the humiliating loss of her independence and her federal and state civil rights because the Defendants, owners and operators of these particular facilities, failed to provide the most basic access for disabled persons.

3. Plaintiff seeks to require Defendants to make these facilities accessible and to enact policies and procedures that ensure that the accessible features at the property are properly maintained as accessible. In addition to requiring that Defendants' facilities be made more accessible to disabled persons, as required by federal and state laws, Plaintiff seeks compensation for her personal damages, and recovery of statutory attorneys' fees, litigation expenses and costs incurred for bringing this action.

4. Defendants denied disabled Plaintiff ELIZABETH CHAVEZ accessible public facilities, including accessible seating, an accessible path of travel to accessible seating, a bar at an accessible height for Plaintiff to use, and an accessible restroom. Plaintiff ELIZABETH CHAVEZ is a "person with a disability" or "physically handicapped person" who requires the use of a wheelchair for mobility. She is unable to use portions of public facilities which are not accessible to mobility disabled persons. On or about October 24, 2024, Plaintiff was denied her civil rights to full and equal access at the subject Club under both California law and federal law, and continues to have her rights denied, because these facilities were not, and are not now, properly accessible to physically disabled persons, including those who must use a wheelchair or other assistive device for mobility due to the failure of Defendants who are owners and operators of the facilities to comply with the law.

5. **JURISDICTION:** This Court has jurisdiction of this action pursuant to 28 USC section 1331 for violations of the Americans with Disabilities Act of 1990, 42 USC sections 12101 *et seq*. Pursuant to pendant jurisdiction, attendant and related causes of action arising from the same facts are also brought under California law, including but not limited to

violations of Health & Safety Code sections 19953-19959; California Civil Code sections 51, 52, 54, 54.1, 54.3 and 55; and Title 24 California Code of Regulations, the California State Building Code.

6. **VENUE:** Venue is proper in this court pursuant to 28 USC section 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's causes of action arose in this district.

7. **INTRADISTRICT:** This case should be assigned to the San Jose intradistrict as the real property which is the subject of this action is located in this intradistrict and Plaintiff's causes of action arose in this intradistrict.

8. **PARTIES:** Plaintiff was the victim of a random act of gun violence in July of 2019. She is a qualified physically disabled person who cannot walk due to paraplegia, and who requires use of a wheelchair for locomotion. She also owns a disabled licensed vehicle which entitles her to park in a properly configured disabled accessible parking space. She has been issued a California state placard for disabled parking.

9. Defendants CLUB RODEO, INC.; VAKILIKI P. KOURETAS (TE); BESSIE VAKILIKI KOURETAS (TE), are and were the owners, operators, lessors and/or lessees of the subject business, property and buildings at all times relevant to this Complaint. Plaintiff is informed and believes that each of the Defendants herein is the agent, employee or representative of each of the other Defendants, and performed all acts and omissions stated herein within the scope of such agency or employment or representative capacity and is responsible in some manner for the acts and omissions of the other Defendants in proximately causing the damages complained of herein.

10. The Club is a place of "public accommodation" and "business establishment" subject to the requirements of 42 USC section 12181(7)(B) of the Americans with Disabilities Act of 1990; of California Health & Safety Code sections 19953 *et seq.*; of California Civil Code sections 51 *et seq.*; and of California Civil Code sections 54 *et seq*. On information and belief, Club Rodeo Rio and its facilities were built after July 1, 1970, and since then have undergone construction and/or "alterations, structural repairs, or additions," subjecting each such facility to

disabled access requirements per Health & Safety Code sections 19953-19959 *et seq*., and, as to construction and/or alterations since January 26, 1993, to the disabled access requirements of section 12183 of the Americans with Disabilities Act of 1990. Such facilities constructed or altered since 1982 are also subject to "Title 24," the California State Architect's Regulations, also known as the California Building Code. Further, irrespective of the alteration history, such premises are subject to the "readily achievable" barrier removal requirements of Title III of the Americans with Disabilities Act of 1990, as defined by the ADA. 42 USC § 12181(9). Further, Plaintiff's claims relate to discriminatory policies and practices, as well as encountering architectural barriers, and improvement of those policies and practices is itself readily achievable.

11. **FACTUAL STATEMENT:** On October 24, 2024, Plaintiff attended a concert with her partner, Antonio, in the San Jose area. The band they went to see was Grupo Codiciado. After the concert, the band made an announcement that there would be an afterparty at Club Rodeo Rio and everyone in attendance at the concert was invited to meet the band at the Club. Plaintiff and her partner were excited about the prospect of getting to meet the members of one of their favorite bands, so after leaving the concert, the couple headed to Club Rodeo Rio.

12. Plaintiff and her partner drove to Club Rodeo Rio, parked their car, and entered the club. When they entered the club, Plaintiff and her partner spoke to one of Defendants' employees to determine how they could reserve a table. Defendants' employee informed Plaintiff and her partner that there was a charge to reserve/sit at a table. Defendant's employee explained that the most inexpensive tables were located on an elevated platform in front of the stage behind the dance floor. Plaintiff could see that the elevated platform was about 12 inches above the floor level. She explained to Defendants' employee that she would not be able to get up onto the platform in her wheelchair. Plaintiff observed that the rest of the seating which was on same level of the dance floor were in accessible to her because they were high-top tables which were too high for her to use in her wheelchair, and it would be unsafe for her to attempt transfer to a high stool or chair. Plaintiff asked Defendants' employee if there was any accessible seating in the Club. After some back and forth between Plaintiff and Defendants' employees, Defendants found and set up a table for Plaintiff and her partner which was not as nice as other seating for

non-disabled persons because of an inferior view, but was at least on an accessible path of travel and was at an accessible height. However, the place that the table was set up was segregated from the rest of the seating and did not have a view of the band on the stage. Plaintiff was disappointed with the table since the main reason she had come to the Club was to get near the band and get close up photos with them.

13. While Plaintiff and her partner were getting settled at their table, Plaintiff went to the bar to try to order drinks for herself and Antonio. Unfortunately, there was no lowered, accessible bar area for her to order the drinks from or transact business. She was unable to get the attention of the bartender from her lowered vantage point, so she went back to the table. Plaintiff was later able to order drinks from a server who came to her table. However, Plaintiff was unable to order drinks at the bar independently, and her ability to order was limited to when the server came to their table to check on them, which was not often since they were in a separate area, away from the other tables. The totality of her experience was not equal or as enjoyable as the experience of non-disabled patrons in the Club because the architectural barriers present there,

14. After Plaintiff and her partner had been at the Club for a short time, Plaintiff had the need to use the restroom. She pushed herself in her wheelchair to the entrance to the women's restroom, but she discovered that the entrance door was too narrow for her to get inside independently. Plaintiff had to ask one of the Club patrons nearby to push her chair into the restroom. This was embarrassing because Plaintiff prides herself on her independence. Once Plaintiff was inside the women's restroom, it was clear that there were no accessible features inside which would allow Plaintiff to use the restroom at the Club. Plaintiff saw two stalls inside the restroom, but neither was large enough to fit her wheelchair inside. There were also no grab bars around either toilet to assist her in transferring to the toilet. Further, the sink was a pedestal style sink that would not allow her sufficient knee space to slide under in order to reach the faucet. Other mounted accessories such as the soap dispenser, paper towel dispenser, coat hook, and sanitary seat cover dispenser were also well out of her reach. Plaintiff attempted to use the restroom, and she found that it was completely inaccessible to her.

15. Almost as soon as she entered the women's restroom, Plaintiff decided to leave

because it was clearly impossible for her to use. However, once she was inside the restroom it was difficult to get out due to the small footprint and the layout of the restroom. Once again, Plaintiff had to ask other Club patrons to assist her. Several ladies (who Plaintiff did not know) attempted to assist her in turning around inside the restroom so that she could exit, but she was still unable to turn around. Ultimately, one of the ladies pulled her out of the restroom backwards. While Plaintiff appreciates these good Samaritans, it should never have been this way.

16. Plaintiff returned to the table and told her partner that she had been unable to use the restroom. Plaintiff tried to stay at Club Rodeo Rio as long as she could because she really wanted to see more of the band Grupo Codiciado. However, Plaintiff had to leave the club early in order to avoid experiencing a bodily functions accident inside the Club. Instead of using the restroom inside the club, Plaintiff had to use a catheter in her vehicle to relieve herself before driving home to avoid a bodily functions accident. This method of urinating is more dangerous to Plaintiff because it is less sanitary than changing her catheter in a restroom with running hot water nearby.

17. The lack of accessible features at Club Rodeo Rio was very disappointing for Plaintiff. She wishes to return to Club Rodeo Rio because she liked the vibe of the club, and the Club attracts the type of music artists who Plaintiff enjoys listening to and seeing live. However, Plaintiff cannot return to Club Rodeo Rio until the premises is made accessible to disabled individuals such as herself.

18. Defendants have failed to provide an accessible restroom at Club Rodeo Rio. To the extent that Defendants could not make the facility or the restroom fully accessible because to do so was not readily achievable, they failed to make the restroom as accessible as possible for disabled persons. Plaintiff estimates the costs of moving partitions to create an accessible stall and providing grab bars in the restroom would be less than $5,000. Further, she estimates by moving or replacing the accessories, such as the sink, soap dispenser and paper towel dispenser so that the operable parts are places at an accessible height would cost less than $3,000. Additionally, providing an accessible path of travel and an accessible table on the elevated seating area would likely cost less than $5,000, and providing an accessible lowered section for disabled

individuals place an order at the bar would likely cost less than $1,000. Each of these are easy to do and do not cost very much to accomplish, and the benefit to disabled persons and Plaintiff is the ability to use the facility safely and independently. More than 34 years after the ADA requires such barriers to be removed, they should have been by now.

19. The above referenced barriers to access are listed without prejudice to Plaintiff citing additional barriers to access by an amended complaint after inspection by Plaintiff's access consultant. *Oliver v. Ralphs Grocery Co.,* 654 F.3d 903 (9th Cir. 2011); *Doran v. 7-Eleven, Inc.* 524 F.3d 1034 (9th Cir. 2008); *Chapman v. Pier One Imports (USA), Inc.*, 631 F.3d 939 (9th Cir. 2011). All of these barriers to access render the premises inaccessible to physically disabled persons who are mobility impaired, such as Plaintiff, and are barriers Plaintiff may encounter when she returns to the premises. All facilities must be brought into compliance with all applicable federal and state code requirements, according to proof.

20. Further, each and every violation of the Americans with Disabilities Act of 1990 also constitutes a separate and distinct violation of California Civil Code section 54(c) and 54.1(d), thus independently justifying an award of damages and injunctive relief pursuant to California law, including but not limited to Civil Code sections 54.3 and 55.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990**
**42 USC §§ 12101 *et seq***

21. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in Paragraphs 1 through 20 of this Complaint and incorporates them herein as if separately re-pleaded.

22. In 1990 the United States Congress made findings that laws were needed to more fully protect "some 43,000,000 Americans [with] one or more physical or mental disabilities;" that "historically, society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;" that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals;" and that "the continuing existence of unfair and unnecessary

discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous..." 42 U.S.C. §12101.

23. Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

24. In passing the Americans with Disabilities Act of 1990 (hereinafter "ADA"), Congress stated as its purpose:

> It is the purpose of this Act
>
> (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
>
> (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
>
> (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and
>
> (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 USC § 12101(b).

25. As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 USC § 12181 *et seq.*). The subject property and facility is one of the "private entities" which are considered "public accommodations" for purposes of this title, which includes but is not limited to any "restaurant, bar, or other establishment serving food or drink" (42 USC § 12181(7)(B)) and any "theater, concert hall, or other place of exhibition or entertainment" (42 USC § 12181(7)(C)).

26. The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182. The specific prohibitions against discrimination include, but are not limited to the following:

<u>§ 12182(b)(1)(A)(ii)</u>: "Participation in Unequal Benefit. - It shall be discriminatory to afford an

individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

§ 12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

§ 12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

The acts and omissions of Defendants set forth herein were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq*.

27. The removal of each of the physical barriers complained of by Plaintiff as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of sections 12181 and 12182 of the ADA. As noted hereinabove, removal of each and every one of the architectural and/or policy barriers complained of herein were already required under California law. Further, on information and belief, alterations, structural repairs or additions since January 26, 1993, have also independently triggered requirements for removal of barriers to access for disabled persons per section 12183 of the ADA. In the event that removal of any barrier is found to be "not readily achievable," Defendants still violated the ADA, per section 12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily achievable."

28. The ability to safely and independently use the restroom is fundamental to enjoying and using any establishment serving drinks and providing entertainment. Therefore, the benefits of creating these accessible features do not exceed the costs of readily achievable barrier removal. These costs are fundamental to doing business, like any other essential function of operating a Club, such as the costs of ensuring fire safety. It is thus readily achievable to remove these barriers.

29. On information and belief, as of the dates of Plaintiff's encounters at the premises and as of the filing of this Complaint, Defendants' actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiff and to other mobility disabled persons in other respects, which violate Plaintiff's right to full and equal access and which discriminate against Plaintiff on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

30. Defendants' actions continue to deny Plaintiff's rights to full and equal access by deterring Plaintiff from patronizing Club Rodeo Rio and discriminated and continue to discriminate against her on the basis of her disabilities, thus wrongfully denying Plaintiff the full and equal enjoyment of Defendants' goods, services, facilities, privileges, advantages and accommodations, in violation of section 12182 of the ADA. 42 U.S.C. § 12182.

31. Pursuant to the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.*, Plaintiff ELIZABETH CHAVEZ is entitled to the remedies and procedures set forth in section 204(a) of the Civil Rights Act of 1964, 42 USC 2000(a)-3(a), as Plaintiff is being subjected to discrimination on the basis of her disabilities in violation of sections 12182 and 12183 of this title. On information and belief, Defendants have continued to violate the law and deny the rights of Plaintiff and other disabled persons to "full and equal" access to this public accommodation since on or before Plaintiff's encounters. Pursuant to section 12188(a)(2)

> [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title. Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative

methods, to the extent required by this title.

32. Plaintiff seeks relief pursuant to remedies set forth in section 204(a) of the Civil Rights Act of 1964 (42 USC 2000(a)-3(a)), and pursuant to Federal Regulations adopted to implement the Americans with Disabilities Act of 1990. Plaintiff ELIZABETH CHAVEZ is a qualified disabled person for purposes of section 12188(a) of the ADA who is being subjected to discrimination on the basis of disability in violation of Title III and who has reasonable grounds for believing she will be subjected to such discrimination each time that she may use the property and premises, or attempt to patronize Club Rodeo Rio, in light of Defendants' policies and physical premises barriers.

WHEREFORE, Plaintiff requests relief as outlined below.

**SECOND CAUSE OF ACTION:**
**VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL CODE SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES ACT AS INCORPORATED BY CIVIL CODE SECTION 51(f)**

33. Plaintiff re-pleads and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 32 of this Complaint and incorporates them herein as if separately re-pleaded.

34. At all times relevant to this complaint, California Civil Code section 51 has provided that physically disabled persons are free and equal citizens of the state, regardless of medical condition or disability:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, *disability, or medical condition* are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Civil Code § 51(b). [Emphasis added.]

35. California Civil Code section 52 provides that the discrimination by Defendants against Plaintiff on the basis of her disability constitutes a violation of the general anti-discrimination provisions of sections 51 and 52.

36. Each of Defendants' discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code section 52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

37. Any violation of the Americans with Disabilities Act of 1990 also constitutes a violation of California Civil Code section 51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including Civil Code section 52. Per Civil Code section 51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

38. The actions and omissions of Defendants as herein alleged constitute a denial of access to and use of the described public facilities by physically disabled persons within the meaning of California Civil Code sections 51 and 52. As a proximate result of Defendants' action and omissions, Defendants have discriminated against Plaintiff in violation of Civil Code sections 51 and 52, and are responsible for statutory, compensatory and treble damages to Plaintiff, according to proof.

39. **FEES AND COSTS:** As a result of Defendants' acts, omissions and conduct, Plaintiff has been required to incur attorney fees, litigation expenses and costs as provided by statute in order to enforce Plaintiff's rights and to enforce provisions of law protecting access for disabled persons and prohibiting discrimination against disabled persons. Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses and costs pursuant to the provisions of California Civil Code sections 51 and 52. Additionally, Plaintiff's lawsuit is intended to require that Defendants make its facilities and policies accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

WHEREFORE, Plaintiff prays for damages and injunctive relief as hereinafter stated.

//

**THIRD CAUSE OF ACTION:
DAMAGES AND INJUNCTIVE RELIEF
FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC FACILITIES IN A PUBLIC ACCOMMODATION
(California Health & Safety Code §§ 19955 *et seq*; Civil Code §§ 54 *et seq.*)**

40. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the factual allegations contained in Paragraphs 1 through 39, above, and incorporates them herein by reference as if separately repled hereafter.

41. Plaintiff ELIZABETH CHAVEZ and other similarly situated physically disabled persons, including those who require the use of an assistive device for mobility, are unable to use public facilities on a "full and equal" basis unless each such facility is in compliance with the provisions of California Health & Safety Code sections 19955 -19959. Plaintiff is a member of that portion of the public whose rights are protected by the provisions of Health & Safety Code sections 19955 *et seq*. Further, Plaintiff is also protected against policy and architectural barrier discrimination by California Civil Code sections 54 and 54.1, the "Disabled Persons Act." "Individuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics, and physicians' offices, public facilities, and other public places." Civil Code § 54(a). Furthermore, "Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities . . . places of public accommodation, amusement, or resort, and other places to which the general public is invited." Civil Code § 54.1(a). Additionally, any violation of the ADA, including but not limited to any violation of 42 USC sections 12182 and 12183, is also incorporated as a violation of the Disabled Persons Act. Civil Code §§ 54(c), and 54.1(d).

42. Title 24, California Code of Regulations, formerly known as the California Administrative Code and now also known as the California Building Code, was in effect at the time of each alteration which, on information and belief, occurred at such public facility since January 1, 1982, thus requiring access complying with the specifications of Title 24 whenever each such "alteration, structural repair or addition" was carried out. On information and belief, Defendants and/or their predecessors in interest carried out new construction and/or alterations,

structural repairs, and/or additions to such buildings and facilities during the period Title 24 has been in effect. Further, Plaintiff alleges, on information and belief, that construction, alterations, structural repairs, and/or additions which triggered access requirements at all relevant portions Club Rodeo Rio, also occurred between July 1, 1970, and December 31, 1981, and required access pursuant to the A.S.A. (American Standards Association) Regulations then in effect, pursuant to the incorporated provisions of California Government Code sections 4450 *et seq*. Further, on information and belief, additions to the building after the initial construction also occurred after January 1, 1972, triggering access requirements per Health and Safety Code section 19959. Alterations or additions after January 26, 1993 trigger ADA liability and requirements per 42 USC sections 12182 and 12183 of the ADA.

43. **INJUNCTIVE RELIEF:** Plaintiff seeks injunctive relief to prohibit the acts and omissions of Defendants as complained of herein which are continuing on a day-to-day basis and which have the effect of wrongfully excluding Plaintiff and other members of the public who are physically disabled from full and equal access to these public facilities. Such acts and omissions are the cause of humiliation and mental and emotional suffering of Plaintiff in that these actions continue to treat Plaintiff as an inferior, and second-class citizen. They serve to discriminate against her on the sole basis that she is a person with disabilities who requires the use of a wheelchair or other assistive device for movement in public places, including the addition of a fully compliant accessible restroom at Club Rodeo Rio.

44. Plaintiff is deterred from returning to use these facilities, because the lack of access will foreseeably cause her further difficulty, discomfort and embarrassment, and Plaintiff is unable, so long as such acts and omissions of Defendants continue, to achieve equal access to and use of these public facilities. Therefore, Plaintiff cannot return to patronize Club Rodeo Rio and its facilities, and is deterred from further patronage until these facilities are made properly accessible for disabled persons. Plaintiff intends to return subject premises to hear music and see bands she likes at Club Rodeo Rio. She will return to the subject premises if it is made accessible to her.

45. The acts of Defendants have proximately caused and will continue to cause

irreparable injury to Plaintiff if not enjoined by this Court. Plaintiff seeks injunctive relief as to all inaccessible areas of the premises that she has personally encountered, and, as to all areas identified during this litigation by Plaintiff's access consultant, that she or other physically disabled persons may encounter in the future. *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034 (9th Cir. 2008); *Chapman v. Pier One Imports (USA), Inc.*, 631 F. 3d 939 (9th Cir. 2011); *Oliver v. Ralphs Grocery* Co., 654 F.3d 903 (9th Cir. 2011). As to the Defendants, Plaintiff seeks preliminary and permanent injunctive relief to enjoin and eliminate the discriminatory practices and barriers that deny full and equal access for disabled persons, and for reasonable statutory attorney fees, litigation expenses and costs.

46. Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any continuing refusal by Defendants to grant full and equal access to Plaintiff in the ways complained of and to require Defendants to comply forthwith with the applicable statutory requirements relating to access for disabled persons. Such injunctive relief is provided by California Health & Safety Code section 19953 and California Civil Code section 55, and other law. Plaintiff further requests that the Court award damages pursuant to Civil Code section 54.3 and other law and attorney fees, litigation expenses, and costs pursuant to Health & Safety Code section 19953, Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5 and other law, all as hereinafter prayed for.

47. **DAMAGES:** As a result of the denial of full and equal access to the described facilities and due to the acts and omissions of Defendants in owning, operating, leasing, constructing, altering, and maintaining the subject facilities, Plaintiff has suffered a violation of her civil rights, including but not limited to rights under Civil Code sections 54 and 54.1, and has suffered difficulty, discomfort and embarrassment, and physical, mental and emotional personal injuries, all to her damages per Civil Code section 54.3, including general and statutory damages, as hereinafter stated. Defendants' actions and omissions to act constitute discrimination against Plaintiff on the basis that she was and is physically disabled and unable, because of the architectural and other barriers created and/or maintained by the Defendants in violation of the subject laws, to use the public facilities on a full and equal basis as other persons. These

violations have deterred Plaintiff from returning to attempt to patronize the Club Rodeo Rio and will continue to cause her damages each day these barriers to access continue to be present.

48. **FEES AND COSTS:** As a result of Defendants' acts, omissions, and conduct, Plaintiff has been required to incur attorney fees, litigation expenses, and costs as provided by statute, in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access for disabled persons and prohibiting discrimination against disabled persons. Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses, and costs, pursuant to the provisions of Civil Code sections 54.3 and 55, and California Health & Safety Code section 19953. Additionally, Plaintiff's lawsuit is intended to require that Defendants make their facilities accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

WHEREFORE, Plaintiff prays for damages and injunctive relief as hereinafter stated.

## PRAYER

Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. Plaintiff has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendants as alleged herein, unless Plaintiff is granted the relief she requests. Plaintiff and Defendants have an actual controversy and opposing legal positions as to Defendants' violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, Plaintiff ELIZABETH CHAVEZ prays for judgment and the following specific relief against Defendant:

1. Issue a preliminary and permanent injunction directing Defendants as current owners, operators, lessors, and/or lessee of the subject property and premises to modify the above described property, premises, policies and related facilities to provide full and equal access to all persons, including persons with physical disabilities; and issue a preliminary and permanent injunction pursuant to ADA section 12188(a) and state law directing Defendants to provide

facilities usable by Plaintiff and similarly situated persons with disabilities, and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided; to cease any discriminatory policies, and to train Defendants' employees and agents in how to recognize disabled persons and accommodate their rights and needs;

2. Retain jurisdiction over the Defendants until such time as the Court is satisfied that Defendants' unlawful policies, practices, acts and omissions, and maintenance of physically inaccessible public facilities and policies as complained of herein no longer occur, and cannot recur;

3. Award to Plaintiff all appropriate damages, including but not limited to statutory damages, and general damages in amounts within the jurisdiction of the Court, all according to proof;

4. Award to Plaintiff all reasonable statutory attorney fees, litigation expenses, and costs of this proceeding as provided by law;

5. Award prejudgment interest pursuant to Civil Code section 3291; and

6. Grant such other and further relief as this Court may deem just and proper.

Date: January 28, 2025

CLEFTON DISABILITY LAW

*/s/ Aaron Clefton*
By AARON CLEFTON, Esq.
Attorney for Plaintiff
ELIZABETH CHAVEZ

**BENCH TRIAL DEMAND**

Plaintiff hereby demands a Bench for all claims for which a jury is otherwise permitted, and waives her right to a jury.

Date: January 28, 2025

CLEFTON DISABILITY LAW

*/s/ Aaron Clefton*
By AARON CLEFTON, Esq.
Attorney for Plaintiff
ELIZABETH CHAVEZ